IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DONNA DUPREE and SHERRY HARTISON, | ) | |
| on behalf of themselves and a class of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 17-1104 |
| | ) | |
| ANGELA LOCKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

The Defendants, JOHN BALDWIN, KEITH BECK, DAVID BRAINARD, CHRISTINE

BRANNON, CLARA CHARRON, DANA CHAUDOIN, DEBBIE DENNING, RENEE

HATFIELD, AARON LEESMAN, ANGELA LOCKE, JEFFREY MASON, JOSHUA

MERREIGHN, DUSTY MONTGOMERY, JEFF NESWICK, ALAN PASLEY, SHABEDA

WARDEN-PENNINGTON, TODD SEXTON, MONICA SLATER, JOSEPH YURKOVICH,

and FELIPE ZAVALA, by and through their attorney, Lisa Madigan, Attorney General for the

State of Illinois, provide the following response in opposition to Plaintiffs' motion for class

certification [d/e 58]:

**Introduction**

On March 7, 2017, Plaintiffs Dupree and Hartison filed a complaint on behalf of

themselves and a class of others similarly situated, with claims arising from a prison search

conducted on October 31, 2013.  [d/e 1].  This putative class action lawsuit arises from the same

set of facts as a previous class action filed on October 30, 2015:  *Brown, et al. v. Locke, et al.*,

case no. 15-1447 (C.D. Ill.)  In *Brown*, the parties briefed class certification but the named

plaintiffs settled as individuals before a decision on class certification was rendered. Now, in this matter, Plaintiffs Dupree and Hartison bring an almost identical motion for class certification. [d/e 58].

Plaintiffs' motion for class certification should be denied. Plaintiffs' motion was untimely, as it was not filed by this Court's June 4 deadline and was filed without leave of Court. Moreover, based on recent Supreme Court case law, no tolling applies to Plaintiffs' class complaint.

Nevertheless, even if Plaintiffs' class complaint or motion had been timely, Plaintiffs fail to meet their burden under Federal Rule 23. Plaintiffs fail to meet the at least three prerequisites listed in Rule 23(a)—failing to show commonality, typicality, or adequacy of representation. Further, Plaintiffs fail to meet the elements required for a class under the sections in Rule 23(b). For the reasons argued more fully below, this action should not be certified as a class action.

### Statement of Facts

Plaintiffs Donna Dupree and Sherry Hartison allege in their complaint that on October 31, 2013, correctional officers and cadets arrived at Housing Units 11 and 15 at Logan Correctional Center. [d/e 1, p. 2]. The correctional officers woke the prisoners, and screamed at them. *Id*. Plaintiffs claim the inmates were ordered to stand in the open doorways of their cells for the strip search in view of cellmates, male correctional officers, and male and female IDOC employees. [d/e 1, p. 3]. Plaintiffs allege that inmates were forced to stand naked in various positions during the group strip search for an unreasonably long period of time. They claim that male correctional officers made derogatory comments and insulting gestures about the inmates' body parts and odors. They claim no accommodations were made for menstruating inmates, who were forced to remove feminine care products and could not replace them. Plaintiffs also allege that the inmates

were then taken to the day room where they were forced to sit facing the wall for upwards of two hours without being allowed to use the restrooms. [d/e 1, pp. 3-4].

Plaintiffs Dupree and Hartison have not put forth any declaration, verified allegation, affidavit, or other sworn testimony to support the allegations in their complaint. The only documents filed by Plaintiffs Dupree or Hartison in in support of Plaintiffs' motion for class certification that even come close are two grievances drafted by Hartison. [d/e 58-4, pp. 11 & 15]. In those grievances, Hartison claimed that she was on housing unit 15 and was strip-searched in front of her cellmate and that male cadets and correctional officers were on the lower gallery (in other words, on a different level of the prison) when she was being strip-searched. *Id*. She does not allege any of the other conduct included in the complaint, such as derogatory comments, refusal to accommodate her needs for feminine care products, being forced to stand naked for an unreasonable period of time, or being refused access to a restroom.

There is no document that was written by, signed, referring to, or otherwise naming Dupree filed as an exhibit to the motion or otherwise filed in the record. Donna Dupree was not housed on Unit 11 or 15 on October 31, 2013. Rather, she was housed on Unit 7. (Dupree's IDOC Living Unit History is attached as Exhibit H, the pertinent field is highlighted). According to Plaintiffs' own allegations, which are limited to searches in housing units 11 and 15 October 31, 2013, Donna Dupree would not have been searched during the exercise conducted on October 31, 2013, as alleged in the complaint.

Having offered no testimony in support of their allegations, named Plaintiffs Dupree and Hartison instead offer the testimony of the previous proposed class representatives in *Brown v. Locke*, case no. 15-1447 (C.D. Ill.). The Plaintiffs here should not be allowed to rely on this testimony in support of their motion for class certification, because the individual named plaintiffs

in *Brown* settled their complaint and released their claims.[1]  Even so, the sworn testimony of Lavi Conner, Sandra Brown, and Latrasha Johnson is inconsistent with many of the allegations in the Complaint in this case. Lavi Conner and Sandra Brown testified that they were not woken up; they were already awake when they were alerted that a search of Housing Unit 11 was about to commence. (*See* attached Ex. A Lavi Conner Dep. 31:18-32:7; Ex. B, Sandra Brown Dep. 40:19-21, 42:22-23, 43:12-15.) Conner stated that when officers arrived at her cell, they did not scream at the inmates, but only said to "get up, get dressed don't touch nothing . . . stand against the wall." (Ex. A at 32:16-18.) Likewise, Brown testified that the only comments she heard officers make during her strip search were strip search commands. (Ex. B at 37:13-38:1.) Latrasha Johnson, who shared a cell with co-plaintiffs Brown and Jerri Lindsey, testified that she did not see any men during her strip search. (Ex. C, Johnson Dep. 48:4-6.) She also recalled menstruating that day and testified that she was permitted to replace her sanitary napkin as she got dressed. (*Id.*at 49:18-20.) Furthermore, while in the Dayroom, Conner testified that she was one of several women allowed to go to the bathroom. (Ex. A at 63:8-14.) She also stated that she was provided sanitary items at that time, as she was also menstruating. (*Id.* 63:15-17.)

Putative Class Member Testimony

Testimony of putative class members also conflicts with the allegations in the complaint. This case has been consolidated with individual actions filed by Plaintiffs Ball, Kidd, and Walton. All further activities in this case will be coordinated with the other Plaintiffs, though this is the lead case.  [d/e 55, p. 2].  One of the individual Plaintiffs whose complaint was consolidated with this case, and therefore a putative class member, testified inconsistently with many of the

---

[1] The settlement sum has been paid, and the *Brown* case was dismissed with prejudice on May 14, 2018.  *See* case no. 15-1447-MMM, d/e 191 (Agreed Notice to the Court Regarding Settlement Payment) & Text Order entered May 14, 2018.

4

allegations in Plaintiffs' complaint. Roslind Ball testified that on October 31, 2013, she was housed on Unit 15-D, a maximum security housing unit. (Exhibit I, Dep. of Roslind Ball, pp. 9-10). Ball was awake before the officers came to search the cells. (Ex. I, p. 12). Ball had one cellmate at the time. (Ex. I, p. 14). One or two female officers came to Ball's cell to strip search her and her cellmate. (Ex. I, pp. 16-17, 20). When she was searched, Ball stood in her cell near the doorway, took her clothes off, squatted, coughed, spread her buttocks, and then was instructed to put her clothes and shower shoes on. (Ex. I, p. 23). The officer searching Ball did not say anything to her or Ball's cellmate other than giving instructions about the search. (Ex. I, p. 24). The other officer who was present during part of Ball's search did not say anything to Ball. (Ex. I, p. 25). Ball was not menstruating on the day of the search. (Ex. I, p. 57).

Other putative class members interviewed for the prior case had similarly varied experiences. The attached affidavit and accompanying exhibits submitted by Sherry Coon detailing those interviews demonstrate that the general "practice" alleged by plaintiffs was different for each putative class member inmate. *See generally* Ex. E.

For example, none of these putative class members described being threatened. Most said the only comments made by correctional officers were simple commands during the search, not "derogatory comments and insulting gestures." (Exs. E-1, E-2, E-3, E-4.) Even former plaintiff Sandra Brown corroborated this fact. (Ex. B at 37:13-38:1.) In addition, most of these putative class members did not have to stand naked in uncomfortable positions for long time periods. Rather, they recalled that their individual searches took no more than a few minutes. (Exs. E-2, E-3, E-4, E-5, E-6.) Nor were all of the women searched in the doorways of their cells. In fact, Laconda McDonald stated that she was searched while standing in the back of her cell. (Ex. E-5.) Maria Pacheco and Melissa Almendarez described being searched while standing

next to the toilet (Ex. E-2, E-3) and Monica Floyd-Brewer and Carmelita Hall stated that during

their searches, the instructing officers stood in the doorways of the cells. (Ex. E-4, E-6.) Even

cellmates Latrasha Johnson and Sandra Brown (both named plaintiffs in the *Brown* suit) testified

that they stood by the window in the back of their cell. (Ex. C at 44:16-20; Ex. B at 44:22-45:4.)

Further, in addition to Latrasha Johnson (Ex. C at 48:4-6), Laconda McDonald (Unit 15) did not

see any men until after her search, when she was fully clothed. (Ex. E-5.)

Many of the women also stated that they did not need to use the bathroom while in either

the dayroom or the gym. (Exs. E-1, E-2, E-4, E-5, E-6; *see also* Declaration of Jessica Leach

attached hereto as Ex. F ¶ 14; *see also* Declaration of Maria Pacheco attached hereto as Ex. G ¶

11.)  One of those women, Monica Floyd-Brewer, noted that two other inmates from Unit 11

were allowed to use the bathroom when they asked. (Ex. E-6.)

IDOC employees ran out of time to finish the searches of some of the prisoners because

the training exercise had to end by a certain time due to work restrictions on the part of the

cadets.  [Pl. Ex. A, 58-1, p. 24].  The exercise was completed around 2:30 p.m. on October 31.

[Pl. Ex. A, 58-1, p. 23].  IDOC officials dispute the bulk of the allegations made by the Plaintiffs

with regards to the searches.  [*See*, generally, Pl. Ex. A, d/e 58-1; & Answers filed at d/e 43, 52].

## Argument

### I.  Plaintiffs' motion is untimely.

Following multiple agreed extensions of time, Plaintiffs failed to file a timely motion

pursuant to this Court's order.  This Court most recently set a deadline of June 4 for the filing of

a class certification petition.  Plaintiffs did not file anything on June 4.  Instead, on June 6, 2018,

Plaintiffs filed a "Notice" with the Court explaining merely that they had missed the deadline

and hoped to have something completed by June 12.  Plaintiffs offered somewhat of an

explanation in that notice; however, such explanation and the failure to meet the June 4 deadline make little sense given the motion actually filed by Plaintiffs. The motion for class certification filed in this action was filed on June 12, 2018. [d/e 58]. It is nearly identical to the class certification motion filed nearly two years earlier in *Brown v. Locke*, case no. 15-1447—a fact that Plaintiffs acknowledge in footnote 1 of their motion. [d/e 58, p. 1, n.1]. A side-by-side comparison of the two memoranda shows how little variation there is: the introductions contain some different phrasing and minor revisions; the legal standards are almost identical, except for a reference in *Brown* to a discovery stay; the statements of facts are almost entirely the same; the proposed classes are the same; and the discussions are very nearly identical, except for what appears to be a copy-and-paste error in the *Dupree* discussion where part of a string cite was omitted. Further, the exhibits filed in this action were taken directly from those filed in *Brown*, as is evident by the overwritten ECF stamps at the top of each page. This motion was filed out of time, without leave first being granted by the Court, and without justification. Accordingly, Defendants object to this motion for being untimely.

### II. Plaintiffs may not move for class certification in this action because the class claims are barred by the statute of limitations.

Section 1983 cases arising in Illinois are governed by a two-year statute of limitations. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). Nonetheless, when a plaintiff files a complaint on behalf of a proposed class, the statute of limitations may be tolled for each member of the class. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974). Tolling pursuant to the *American Pipe* doctrine does not toll successive class actions, but rather only individual suits. *China Agritech, Inc. v. Resh*, No. 17-432, 2018 WL 2767565, 584 U.S. ___ (June 11, 2018).

On June 11—the day before Plaintiffs filed their motion for class certification—the Supreme Court of the United States issued a ruling that forecloses plaintiffs' motion now at issue. In *China Agritech*, the court held that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." 2018 WL 2767565, at *6. The Supreme Court wrote very clearly: "Time to file a class action falls outside the bounds of *American Pipe*." *Id*. at *15. If additional class filings are to be made, they should be made early on. *Id*. at *6. Having the class filings occur early gives the district court options in choosing the best plaintiff(s) and class counsel, and will push class certification decisions to be made earlier in the case. *Id*. at *7. Allowing tolling of successive class actions negates the goals of efficiency and economy of litigation endorsed by *American Pipe*. *Id*. at *15 ("The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well. Extending *American Pipe* tolling to successive class actions does not serve that purpose.")

Here, the original action—*Brown v. Locke*—was initiated with one day remaining on the two-year statute of limitations. [*See* d/e 50, p. 2]. The Plaintiffs named in this suit were not named plaintiffs in *Brown*, nor had they filed their own suits prior to the expiration of the statute of limitations. The named Plaintiffs here filed this putative class suit on March 7, 2017, nearly three-and-a-half years after the search at issue. This is precisely the situation addressed by *China Agritech*. There, the Supreme Court reconciled the language of *American Pipe* with its overextension by plaintiffs who rely on previously filed putative class actions to toll the statute of limitations for later filed class actions. The Supreme Court recognized that the tolling was permissible in certain circumstances where plaintiffs who intervened after a putative class action was filed had not slept on their rights. Yet, a plaintiff who waits too long after a putative class

action may still forfeit the ability to proceed on a class claim. The Supreme Court wrote: "A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suit." *Id*. at *9-10.

*China Agritech* has been already been applied to a case where, like this case, there had been no ruling on class certification in the predecessor suit. In *Dormani v. Target Corporation*, the court declined to extend the tolling rule from *American Pipe* to a subsequent class complaint. Case no. 17-CV-4049, 2018 WL 3014126, at *2 (D. Minn. June 15, 2018). There, the court noted that there was no authority in that circuit to extend the tolling rule where there had been no prior ruling on class certification. *Id*. The court also found that, even if *American Pipe* tolling had been appropriate, the tolling would apply only to subsequent individual claims, not a subsequent class action, as recently made clear by *China Agritech*. *Dormani*, 2018 WL 3014126, at *2.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (internal quotation omitted). Here, Plaintiffs seek to proceed as a class, but would only be allowed to do so if tolling could be provided pursuant to *American Pipe*. Yet, *American Pipe* does not allow the class claims to toll, only the individual actions. "*American Pipe, which* "tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial." *China Agritech*, 2018 WL 2767565, at *6. The Supreme Court distinguished tolling for individual claims—a finite period—from what could occur if tolling for successive class suits were allowed—successive and limitless class

actions.  Here, allowing Plaintiffs to proceed as a class would do the very thing that the Supreme

Court rejected in *China Agritech*.  While Plaintiffs may pursue their individual claims, they may

not proceed as a class.

**III. Even if the class complaint were timely, Plaintiffs fail to meet the prerequisites listed in Rule 23(a).**

A party seeking to certify a class action must meet all of the necessary elements of Rule

23.  Fed. R. Civ. P. 23.  First, the movant must show the putative class satisfies the four

prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation. Fed. R. Civ. P. 23(a); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th

Cir.2006); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir.1992). Then, the action must

qualify under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*,

963 F.2d at 1017.  A party seeking class certification bears the burden of proving that each of

these requirements under Rule 23 has been met. *General Telephone Co. of the Southwest v.

Falcon*, 457 U.S. 147, 162 (1982).  "Before deciding whether to allow a case to proceed as a

class action, therefore, a judge should make whatever factual and legal inquiries are necessary

under Rule 23." *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001)

**A. The class claims fail the commonality analysis because there is no single answer that will resolve a central issue in all class members' claims.**

To assess whether the class is sufficiently cohesive to satisfy the commonality prong,

Rule 23(a)(2), a court must conduct a 'rigorous analysis' to determine whether the evidence and

law support plaintiffs' theory. *Wal-Mart v. Dukes*, 564 U.S. 338, 349, n. 5 (2011).  The

commonality analysis will often overlap with plaintiffs' merits contentions.  *Id*. at 349-50.

Courts are not simply applying a pleading standard; instead a prospective class must be prepared

to prove that there are *in fact* common questions of law or fact.  *Id*. at 350-51 (emphasis in

original text).  Because the purpose of Rule 23 is efficiency, class certification under Rule 23 is appropriate only when a large number of plaintiffs share similar potentially viable claims whose "truth or falsity" can be resolved one way or another "in one stroke," making a single suit more efficient than multiple ones  *Id*. at 350.

The Seventh Circuit, following the decision in *Wal-Mart*, has stated that to satisfy the Rule 23(a)(2) prong, all class members' claims must "share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims."  *Jaime S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("What matters to class certification is the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation.") (quoting *Wal-Mart*, 1331 S.Ct. at 2551).

Plaintiffs' list of common questions, identified in Paragraph 61 of the Complaint, are essentially the same:  "Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Fourth, Eighth and Fourteenth Amendments?" [d/e 1, pp. 15-16, ¶ 61].  Plaintiffs' Complaint asserted that the strip search, conducted as a cadet training exercise, had no penological purpose and therefore violated the Fourth Amendment. On December 13, 2017, the Court dismissed Plaintiffs' Fourth Amendment Claim with prejudice. Accordingly, the fact of the strip search itself is not enough to satisfy the commonality prong. Plaintiffs' remaining alleged common question is whether "the way in which [the strip search] was conducted" violates the Eighth Amendment.  Because, as demonstrated by the detailed factual differences identified in this response, the putative class members had vastly different experiences during the strip search, no single answer regarding Defendants' conduct will resolve

this action.  *See Smentek v. Sheriff of Cook Cty.*, No. 09 C 529, 2014 WL 7330792, at *8-9 (N.D. Ill. Dec. 22, 2014).

For example, certain putative class members might have been menstruating, while the majority were not.  Some class members may claim they had to use the restroom, while others were able to do so, while for others, the thought never occurred to them.  While the suit alleges that the female inmates could see male officers during the search, other putative class members have flatly denied this. Accordingly, in order for the putative class to prove that the search was "demeaning, dehumanizing, and humiliating" [Compl., d/e 1, ¶ 77] under the Eighth Amendment, each plaintiff will have to demonstrate what happened to them individually.  The varying testimony shows that no single answer will resolve all putative class member claims, and the putative class fails the commonality prong of Rule 23.

### B.  The class claims fail to meet the typicality requirement because the named Plaintiffs cannot show their claims share the essential characteristics of the group at large.

The typicality requirement of Rule 23(a)(3) focuses on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–97 (7th Cir. 1993); *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  In other words, proof of the named plaintiffs' claims must prove the claims of any other class member.  *Id*. "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the

claims of the class at large." *Oshana*, 472 F.3d at 514 (internal quotations omitted); *see also Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008).

Plaintiffs allege that searches were conducted in two different locations:  housing units 11 and 15.[2]  The searches in each of the two housing units were individualized and performed by different correctional officers and cadets.  The layout of the cells in Unit 15 is far different than the layout of cells in Unit 11.  Unlike Unit 11, Unit 15 is a maximum-security housing unit and, thus, is a more secure and secluded building. The unit was located at the back of the prison and was made up of two-person cells with toilets and sinks as well as small, screened windows looking outside. Some women in Unit 15 remarked that they could not see clearly out of their windows (Exs. E-1, E-2, E-4), while others confirmed that they could not see any buildings or walkways outside their windows. (Exs. E-3, E-5, E-7.)

Moreover, because Unit 15 is a maximum security housing unit, putative class members explained that their cell doors remained closed unless they were manually opened from the outside by a correctional officer. (*See, e.g.*, Ex. E-3.) This means that on the day of the strip search, women not yet searched remained in their closed cells while other searches were taking place. (*See* Ex. E-1.) Further, sightlines through the doors' narrow chuck holes varied among Unit 15 inmates since some cells were located on the top floor (Ex. E-2), some were located on the bottom floor (Ex. E-5), some cells directly faced a stairway and front desk near the entrance of the housing unit (Ex. E-4), some faced a dayroom (Ex. E-7), and some faced other cells (Ex. E-5).  Thus, the claims of persons in Unit 11 that during the search they could be viewed by other persons, including male correctional officers or cadets, through the windows or the cell

_____

[2] Only housing unit 11 was completely searched; the strip searches were not completed in Unit 15.  [Locke Dep., Pl. Ex. A, 58-1, p. 29].

door are, in each case, individualized, fact-specific and different than claims of inmates in Unit 15.

And, as evidenced by the testimony of consolidated putative class member Ball, there were inmates searched in a manner that was neither public nor humiliating. Ball was searched inside her cell with her roommate present and with the door open. (Ex. I, p. 23). Ball estimates she was personally searched for three to five minutes by a woman. (Ex. I, p. 24). The woman searching Ball did not say anything else besides giving instructions about the search. (Ex. I, p. 24). Two other female officers were near Ball's door while she was strip-searched, but neither of those officers said anything to Ball. (Ex. I, p. 25). Ball testified that no one acted unprofessionally towards her during her search. (Ex. I, p. 50). Ball testified that she saw male officers walking around "aimlessly" in the building during her strip search. (Ex. I, pp. 28-29). Ball was not menstruating on October 31. (Ex. I, p. 57). She testified that she sat, cuffed in the gym for two to three hours and that she asked once if she could use the restroom and was denied. (Ex. I, pp. 34-35). According to Ball, in addition to asking to use the restroom, she asked for her cuffs to be loosened and was told "no." (Ex. I, p. 36). Ball's experience of the strip search and waiting while the cell house was searched differs greatly from the allegations contained in the Complaint filed in this action.

The named Plaintiffs move for class certification without even showing that their own experiences are typical of the class or that they conform to their Complaint.[3] When considering a motion for class certification, the court must not accept the complaint's allegations as true or

---

[3] Similarly, there is little sworn testimony from the consolidated Plaintiffs. There is a declaration of Ball [Pl. Exhibit B, d/e 58-2, pp. 1-2], and Plaintiff Ball was deposed (Ex. I), but there is no sworn testimony of Kidd or Walton. There are some grievances filed by those Plaintiffs that are included in the record [*see* Pl. Exhibit C, d/e 58-3, pp. 70-71 (Kidd grievance); and d/e 58-4, p. 59 (Walton grievance)]. But, there is nothing else from those individual Plaintiffs.

assume that all members of a proposed class are similarly situated.  *Szabo*, 249 F.3d at 677.

Plaintiffs fail to provide adequate factual basis to support their motion for class certification.

For these reasons, the Plaintiffs involved in this suit cannot meet the typicality

requirement.

### C.  Plaintiffs fail to establish that the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires a showing that "the representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In many cases, "the

typicality requirement "merges with the further requirement that the class representative 'will

fairly and adequately protect the interests of the class.'"  *CE Design Ltd. v.King Architectural*

*Metals, Inc*., 637 F.3d 721, 724 (7th Cir. 2011). The class complaint in this action was filed by

Plaintiffs Dupree and Hartison.  As noted above, neither Plaintiff put forth any declaration,

verified allegation, affidavit, or other sworn testimony.  By failing to support the class claims

alleged in the complaint, the named plaintiffs have failed not only to demonstrate that their

claims are typical of class claims, but also have failed to adequately protect the interests of the

class.

Instead, Plaintiffs rely on the sworn testimony of Lavi Conner [d/e 58-6], Sandra Brown

[d/e 58-7], and Latrasha Johnson [d/e 58-8], to support the facts alleged here.  Those individuals

are 3 of the 4 named Plaintiffs from the *Brown* suit.  Because *Brown* has been fully resolved, the

claims of representative Plaintiffs in that suit may not substitute for proof from the named

plaintiffs in this suit.  Thus, their sworn testimony is of no use for a motion for class certification

here.

**IV. This action should not be certified as a Rule 23(b)(3) class because individualized questions predominate.**

Certification of a Rule 23(b)(3) class for damages requires that a court find that common questions predominate over questions affecting individual members. Fed. R. Civ. P. 23(b)(3). The inquiry is similar to commonality but is more demanding. *See, e.g., Thomas v. Matrix Corp. Servs, Inc.,* 2012 WL 3581298, at *2 (N.D. Ill. Aug. 17, 2012).

Plaintiffs contend that strip search cases are uniformly certified (Motion at 10-11), but all of the cases they cite involve a policy or uniform practice. *See, e.g., Streeter v. Sheriff of Cook County*, 256 F.R.D. 609 (N.D. Ill. 2009) (uniform practice; 4th Amendment claim); *Young v. County of Cook*, 2007 WL 1238920 (N.D. Ill. April 25, 2007) (uniform policy; 4th and 14th Amendments); *Blihovde v. St. Croix County, Wisconsin*, 219 F.R.D. 607 (W.D. Wis. 2003) ("If plaintiffs fail to ultimately prove that defendants had a policy or custom regarding strip searches that violated the Fourth Amendment, I will decertify the class…."; 4th and 14th Amendments); *Bullock v. Sheahan*, 225 F.R.D. 227 (N.D. Ill. 2004)(policy and practice; 4th and 14th Amendments). The class certification in *Throgmorton*, 2014 WL 5349870 (C.D. Ill. October 21, 2014) is no different. There, the court found commonality, for instance, because "Each putative class members' claims derive from the same conduct or practice by the same Defendants." *Id*. at *3. Here, in contrast, Plaintiffs do not challenge the Illinois DOC's strip search policy, but rather challenge the allegedly improper implementation of that policy.

Each putative class member will have to prove, *for purposes of liability*, the following individualized facts:

- She was awoken, screamed at and threatened;
- She was searched in full view of males and non-participants;
- She was forced to stand in uncomfortable positions for an extended period of time;
- Defendants insulted her about her body parts and odor;

- She was menstruating, and not offered feminine care products after the search; and
- She needed to use the washroom, and was prohibited from doing so.

When the sworn testimony presented here is compared to that *alleged* in Plaintiffs' Complaint (the named Plaintiffs themselves have failed to put forth sufficient evidence to prove any allegations in their Complaint), it is apparent that each individual involved had different experiences which will require individualized inquiry. These individualized inquiries predominate over any common issues. *Cf. Smentek*, 2014 WL 7330792, at *10 ("While common questions may predominate in cases that allege a uniform policy or practice constituting deliberate indifference, courts often refuse to certify classes under Rule 23(b)(3) in cases alleging improper implementation of uniform policies. In those cases, courts find that individual issues predominate over common issues.")[4]

### V. There is no action or refusal to act that warrants the imposition of a class pursuant to Rule 23(b)(2).

Here, Plaintiffs seek class certification for money damages and also pursuant to Rule 23(b)(2) for class-wide injunctive relief. The expressed bases for this class-wide injunction are only 2 searches—one performed at Lincoln Correctional Center on March 31, 2011, and the one at issue here, performed at Logan Correctional Center on October 31, 2013.

However, a lawsuit brought on behalf of the female inmates searched on March 31, 2011 at Lincoln Correctional Center has already been tried to a jury. The case was *Throgmorton v. Reynolds*, case number 12-3087.[5] A trial was held on the matter in November 2016, and the

---

[4]Alternatively, the putative class is overbroad as defined, because it includes many individuals who did not experience the same conduct and therefore did not suffer any Eighth Amendment injury because of that conduct. *See Messner v. Northshore University Healthsystem*, 669 F.3d 802, 825 (7th Cir. 2012) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir.2009)("a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.")

[5] Immediately prior to trial, the lead plaintiff in *Throgmorton* withdrew from the case and the case was thereafter referred to as *Henry v. Reynolds*. However, Plaintiffs referred to this case as *Throgmorton* in their class certification

Plaintiffs lost on their claim that the search violated their rights as secured by the Eighth Amendment after the jury returned a verdict in favor of the prison officials. After the jury verdict, the court entered judgment in favor of the Defendants and against the Plaintiffs. Accordingly, the March 2011 search, which was found not to violate any Eighth Amendment rights, cannot support a need for injunctive relief in this matter.

The other action in contention is the search directly at issue here—on October 31, 2013—which occurred nearly five years ago. Plaintiffs provide no evidence of any alleged unconstitutional searches that occurred after October 31, 2013. Plaintiffs claim that they "seek to end Defendants' practice of conducting humiliating mass public strip searches of female prisoners" and are thus entitled to a class to address injunctive relief. [d/e 58, p. 2]. Plaintiffs can point to only one alleged instance of such behavior. And in fact, the evidence shows that the policies in place by IDOC prohibit humiliating, public strip searches of prisoners. IDOC policy generally prohibits staff of the opposing gender from performing or observing strip searches. [Pl. Ex. G, d/e 58-9, pp. 17, 34-35]. IDOC policy is to search inmates depending upon their living areas. [Pl. Ex. G, d/e 58-9, pp. 45-46]. IDOC does not perform large group strip searches, but attempts to afford the inmates some privacy through the use of stalls or screens or by ordering other inmates to turn away from the search. [Pl. Ex. G, d/e 58-9, pp. 46-47, 49-50]. There is insufficient basis for this Court to grant certification for a class pursuant to Rule 23(b)(2).

---

memorandum (likely as a result of restating the arguments filed in *Brown*, before the lead Plaintiff withdrew from *Throgmorton*). To reduce confusion, Defendants have also referred to CDIL Case No. 12-3087 as *Throgmorton v. Reynolds*.

**VI. Claim preclusion bars Plaintiffs' request for a class certified pursuant to Rule 23(b)(2) for injunctive relief.**

In *Throgmorton v. Reynolds*, case No. 12-3087, an earlier strip search case brought by female inmates against IDOC for a search conducted on March 31, 2011, the court certified the following injunctive class:

> Class II ("Injunctive Relief Class"): All women who are currently incarcerated at Logan Correctional Center, and all women who will be incarcerated at Logan Correctional Center in the future.

2014 WL 5349870 at *2 (C.D. Ill. Oct. 21, 2014).

Here, Plaintiffs seek to certify the same class as Class II:

> Class II ("Injunctive Relief Class"): All women who are currently incarcerated at Logan Correctional Center, and all women who will be incarcerated at Logan Correctional Center in the future, who are at risk of being subjected to a group strip search during a cadet training exercise.

[d/e 58, p. 10]. Indeed, in their motion for class certification, Plaintiffs repeatedly cite to *Throgmorton*, arguing that the injunctive class in this case is proper because the injunctive class has already been certified in *Throgmorton*. Plaintiffs go so far as attempt to support class certification with affidavits previously filed in support of class certification in *Throgmorton*.

"Claim preclusion also applies in the class action context." *Cleary v. Philip Morris USA, Inc.*, 683 F. Supp. 2d 730, 737 (N.D. Ill. 2010). "A judgment in a properly entertained class action is binding on class members in any subsequent litigation . . . . A judgment in favor of the defendant extinguishes the claim, barring a subsequent action on that claim." *Id.* (*citing Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874, (1984)). Even class members who were not named plaintiffs in a prior class action are bound by an earlier judgment in the first class case, so long as they were adequately represented by the class representatives. *Id.* (*citing Hansberry v. Lee*, 311 U.S. 32, 43 (1940)).

In *Throgmorton*, the jury considered the inmate-plaintiffs' claims that they had been subjected to a humiliating public strip search. The jury returned a verdict for the defendants and against the plaintiffs on November 21, 2016. Because the request for injunctive relief was denied there and judgment entered for the prison official-defendants, and there is no claim that the class representatives in that suit failed to adequately represent the claims, the decision should be binding here.

### Conclusion

Plaintiffs' motion for class certification should be denied. First, Plaintiffs' motion was untimely. Second, Plaintiffs' class complaint was filed outside the statute of limitations and there is no tolling that allows for a class action to be filed in this instance. Furthermore, Plaintiffs fail to meet the necessary requirements of Rule 23. For these reasons, Plaintiffs' motion for class certification should be denied.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' motion for class certification.

Respectfully submitted,

JOHN BALDWIN, KEITH BECK, DAVID BRAINARD, CHRISTINE BRANNON, CLARA CHARRON, DANA CHAUDOIN, DEBBIE DENNING, RENEE HATFIELD, AARON LEESMAN, ANGELA LOCKE, JEFFREY MASON, JOSHUA MERREIGHN, DUSTY MONTGOMERY, JEFF NESWICK, ALAN PASLEY, SHABEDA WARDEN-PENNINGTON, TODD SEXTON, MONICA SLATER, JOSEPH YURKOVICH, and FELIPE ZAVALA,

Defendants,

Lisa Cook, #6298233
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 557-7081 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us

LISA MADIGAN, Illinois Attorney General,

Attorney for Defendants,

By:   s/Lisa Cook
LISA COOK
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

DONNA DUPREE and SHERRY HARTISON, )
on behalf of themselves and a class of others )
similarly situated, )
                                 )
           Plaintiffs, )
                                 )
      vs. )          No. 17-1104
                                 )
ANGELA LOCKE, et al., )
                                 )
          Defendants. )

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 11, 2018, the foregoing document, DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION,
was electronically filed with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to the following:

      Blake W. Horwitz           bhorwitz@bhlfattorneys.com

      Jared S. Kosoglad          jared@jaredlaw.com

                              Respectfully Submitted,

                                s/Lisa Cook            
                               Lisa Cook, #6298233
                               Assistant Attorney General
                               Attorney for Defendants
                               500 South Second Street
                               Springfield, Illinois  62701
                               (217) 557-7081 Phone
                               (217) 524-5091 Fax
                               E-Mail:  lcook@atg.state.il.us