**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| DONNA DUPREE, et al., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 17-1104** |
| | ) | |
| ANGELA LOCKE, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is now before the Court on the Plaintiffs' Motion for Class Certification.  (ECF No. 58).  For reasons stated herein, Plaintiffs' Motion for Class Certification (ECF No. 58) is DENIED.  This case shall proceed on the individual Plaintiffs' claim.

**BACKGROUND**

On March 7, 2017, Plaintiffs Donna Dupree ("Dupree") and Sherry Hartison ("Hartison") (collectively Dupree and Hartison referred to as "Plaintiffs" or "Named Plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 on behalf of themselves and a class of similarly situated individuals alleging, among other things, they had been subjected to an "unjustified, invasive and humiliating public strip search inflicted upon [them] at Logan Correctional Center on October 31, 2013."  (ECF No. 1).  Notably, this case was filed immediately prior to the dismissal of *Brown et al. v. Locke et al.*, ILCD Case No. 15-1447 (J. Mihm), a case brought by Plaintiffs Sandra Brown, Latrasha Johnson, Jerri Lindsey, and Lavi Conner.  There is no dispute the factual basis of *Brown* is substantively the same as it is here.  *Brown et al. v. Locke et al.*, ILCD Case No. 15-1447, (ECF No. 1) *compare with* (ECF No. 1).  The allegations in this case are as follows:

On October 31, 2013, correctional officers and cadets arrived at Housing Units 11 and 15 at Logan Correctional Center.  (ECF No. 1 at 2).  The correctional officers informed the prisoners

that they were there to perform a strip search, and any inmate who refused to cooperate would be placed in segregation. *Id*. The inmates were ordered to stand in the open doorways of their cells for the strip search in view of other cellmates, male correctional officers, male and female IDOC employees, the then-Warden, and others. (ECF No. 1 at 3). Requests by any inmates to move in a more private area were refused. *Id*. Plaintiffs allege:

> Women were forced to stand naked in various positions during the group strip search for an unreasonably long period of time. During the mass strip search, male correctional officers made derogatory comments and insulting gestures about the women's body parts and odors. No accommodations were made for menstruating women, who were forced to remove sanitary napkins and tampons in view of their cellmates and other non-participants to the strip search.

*Id*.

Plaintiffs further allege that after the strip searches were completed, they were not allowed to wash themselves even though they had touched themselves in intimate parts of their bodies. *Id*. Plaintiffs also allege that they were then taken to the Logan Correctional Center room where they were forced to sit facing the wall for upwards of two hours without being allowed to use the restrooms – with women who were menstruating not allowed to change their clothing. (ECF No. 1 at 3-4). Defendants are (or were) employed by the Illinois Department of Corrections in various capacities. (ECF No. 1 at 6-8).

*Brown* was resolved when the Defendants reached a settlement with the named plaintiffs. *See Brown et al. v. Locke et al.*, ILCD Case No. 15-1447, (ECF No. 87, Order and ECF No. 88, Judgment). The issue of class certification was never ruled on in *Brown*. Notably, this Court dismissed *Brown* only after considering the interest of the putative class members. *Brown et al. v. Locke et al.*, ILCD Case No. 15-1447, (ECF No. 87). The filing of this suit was a contributing factor in approving the settlement, but also it should be noted that counsel in *Brown* sent notice to the putative class members advising them of the settlement, and advised them no relief would be

afforded to them through the settlement. *Brown et al. v. Locke et al.*, ILCD Case No. 15-1447, (ECF No. 87 at 6). Notably, consolidated with the case now before the Court are three inmates' suits involving the same basic facts. *See Ball v. Locke et al.*, ILCD Case NO. 17-3028; *Walton v. Locke et al.*, ILCD Case No. 17-3116; and *Kidd v. Locke et al.*, ILCD Case No. 17-3111.

On June 12, 2018, Plaintiffs filed their Motion to Certify Class. (ECF No. 58). In their Motion, Plaintiffs explain they seek to represent approximately 200 other inmates who, like them, underwent the strip search. (ECF No. 58 at 1). Plaintiffs assert that, under Rule 23, this action "easily" meets the threshold requirements - numerosity, commonality, typicality, and adequacy of representation - for class certification. (ECF No. 58 at 2).

Defendants object to the Motion arguing, among other things, the class action is barred by the statute of limitations under the recent Supreme Court case of *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018). Defendants also argue Plaintiffs failed to meet the prerequisites of commonality, typicality, and adequacy of representation listed in Rule 23. On August 7, 2018, Plaintiffs filed their Reply arguing *China Agritech* is inapplicable to this case because class certification in the previous case (*Brown*) had never been addressed. (ECF No. 62 at 3). Defendants filed a Notice of Supplemental Authority attaching a case from the Northern District of Illinois holding that the tolling issue raised in *China Agritech* is not contingent on whether class certification had been addressed or not. (ECF No. 63-1); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil Inc.*, No. 14 C 2032, 2018 WL 3659349, at *1 (N.D. Ill. Aug. 2, 2018). The matter was argued on August 10, 2018, and this Order follows.

## DISCUSSION

On June 11, 2018, the Supreme Court issued its opinion in *China Agritech* addressing the issue of whether:

[ ] Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?

*Id.*, 138 S. Ct. at 1804.

The Supreme Court stated its:

[ ] answer is no. *American Pipe*[1] tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

*Id.*, 138 S. Ct. at 1804.

Based simply on the issue presented, it would appear this case falls outside the umbrella of *China Agritech*. In fact, this Court was concerned with the ability of the *Brown* putative class members to advance their own claims when the individual named plaintiffs settled their dispute with the defendants prior to a determination on class certification. The law in this Circuit at the time of the dismissal in *Brown* was a pending class action could toll the statute of limitations for follow-on class action. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011). Notably, *Brown* was filed one day prior the expiration of the statute of limitations. And, the Plaintiffs filed their purported class action prior to the dismissal of *Brown*. As such, under *Sawyer*, the statute of limitation was tolled during the pendency of *Brown*, and this class action was filed prior to the expiration of the statute of limitation. Plaintiffs argue this is still the law and the Supreme Court's holding in *China Agritech* extends no further than cases where there has been a denial of class certification. (ECF No. 62 at 3). Plaintiffs caution that if the rule were extended to cases like the one presented here "defendants could wait out statutory time limits and settle with individual plaintiffs to the detriment of class members, forever avoiding class

---

[1] *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).

allegations, a circumstance prevented by *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974)." *Id.*

Plaintiff raised a valid concern. Nonetheless, the District Court in *Practice Management Support Serv*ices examined *China Agritech* and came to a contrary opinion. The Court in *Practice Management Support Serv*ices noted that the Supreme Court "[ ] purported to resolve a 'division of authority among the Courts of Appeals' over a broader question: "whether otherwise-untimely successive class claims may be salvaged by *American Pipe* tolling." *Id.*, 2018 WL 3659349, at *4 *citing China Agritech*, 138 S. Ct. at 1805. The District Court surmised that "[ ] the Supreme Court repeatedly stated its holding in clear terms that were in no way qualified based on how the prior class action lawsuit was resolved." *Id. citing China Agritech*, 138 S.Ct. *a*t 1804 ("*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."); *id.* at 1806 ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action"); *id.* at 1811 ("it is the rule we adopt today: Time to file a class action falls outside the bounds of *American Pipe*"). The District Court ultimately concluded:

> If the Supreme Court wanted to make its holding contingent on the reason why the earlier class action was dismissed, it would have done so. It was fully cognizant of the varying approaches taken by the courts of appeals, some of which had conditioned their holdings on how the prior class action was resolved. *See id.* at 1805-06 (collecting cases).

*Id.*, 2018 WL 3659349, at *4.

Prior to *China Agritech*, in the context of allowing tolling, the Seventh Circuit in *Sawyer* found no distinction between cases that had been denied class certification and those being dismissed in other ways. The Seventh Circuit explained:

> And it does not matter, under federal law, whether the first suit's status as a would-be class action ends by choice of the plaintiff (who may abandon the quest to

5

represent a class or, as Park Bank did, bow out altogether) or by choice of the judge. Atlas Heating insists that Park Bank's suit does not count because it was "never a class action." Yet the first suits in *American Pipe* and *Crown, Cork & Seal* also were "never class actions." If they had been certified as class actions, there would have been no occasion for sequential class litigation. The rationale of *American Pipe* does not permit a distinction among situations in which the putative class representative gives up before, or after, the judge decides whether the case may proceed on behalf of a class. Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action—which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad. (Or perhaps because the defendant buys off the original plaintiff as soon as the statute of limitations runs, hoping to extinguish the class members' claims. That's a good reason for tolling, not a reason for blocking later suits.)

*Id*. at 563. Again, this was in context of allowing the tolling of a claim, and similar to the Plaintiffs here, the Seventh Circuit raised the concern that "the defendant [could] buy[ ] off the original plaintiff as soon as the statute of limitations runs, hoping to extinguish the class members' claims." *Id*. But, *China Agritech* provides significant guidance by explaining that "efficiency and economy of litigation" [ ] do not support maintenance of untimely successive class actions." *Id*. at 1806. *China Agritech* specifically notes that "any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id*. The proposed class filings could be made prior to a determination on class certification. In that regard, the Supreme Court indicates a resolution on class certification is not determinative in whether the statute of limitation is tolled, and this Court so finds. This Court recognizes the potential abuse raised by the Plaintiffs, but *China Agritech* notes this concern is alleviated by the timely filing of multiple actions where the Court can advance the case that is best suited for the class action.

Moreover*, China Agritech* indicates protection should be afforded to "those plaintiffs [who] reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims." *Id*. at 1808. Here, once the named plaintiffs in *Brown* settled the case, the Plaintiffs immediately filed this action. In that regard, it could be argued these Plaintiffs were

prompt in advancing their rights. That is true on behalf of themselves, but it is difficult to say the same for the class when no effort was made until dismissal was sought in the prior class action that was filed at the eve of the expiration of the statute of limitation.

This Court also recognizes additional guidance from the higher courts would be helpful in removing any doubt as to *China Agritech*'s application to cases similar to that presented here. In the end, the Court adopts the approach taken in *Practice Management Support Serv*ices, and finds this subsequent action is barred by the statute of limitations.

## CONCLUSION

For reasons stated herein, the Plaintiffs' Motion for Class Certification (ECF No. 58) is DENIED. This case shall proceed on the individual Plaintiffs' claim. The Court will contact the Parties to schedule a status conference to establish the remainder of the schedule. The Parties should immediately confer to prepare a proposed schedule to present to the Court in advance of the status conference.

Entered this 11th day of September 2018.

_____/s/ Michael M. Mihm_____
Michael M. Mihm
United States District Judge