IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DONNA DUPREE, SHERRY HARTISON, ROSLIND BALL, WILLETTE BENFORD, SHREE STIDHUM, SHANDRA KIDD, TYESHA WALTON, and SARAH STADTFELD, <br><br>Plaintiffs, <br><br>v. <br><br>ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE, LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; SGT. BRAINARD; AND Unknown Illinois Department of Corrections Employees, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 17-cv-1104 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY DEMANDED** |

## JOINT AMENDED COMPLAINT

Plaintiffs DONNA DUPREE, SHERRY HARTISON, ROSLIND BALL,

WILLETTE BENFORD, SHREE STIDHUM, SHANDRA KIDD, TYESHA WALTON, and

SARAH STADTFELD, , through their attorneys, JARED S, KOSOGLAD, P.C., complaining of

Defendants ANGELA LOCKE, in her individual and official capacity as former Warden of

1

Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD, state as follows:

## INTRODUCTION

1. This action is pursuant to 42 U.S.C. § 1983, and is challenging the unjustified, invasive and humiliating public strip search inflicted upon female prisoners at Logan Correctional Center ("Logan") on October 31, 2013.

2. On the morning of October 31, 2013, correctional officers and cadets arrived at certain housing units in Logan Correctional Center, including Housing Units 11 and 15, waking up many prisoners and interrupting others as they were just getting out of bed. Officers screamed at the prisoners that they were there to perform a strip search, and that anyone who did not cooperate would be placed in segregation.

3. Officers then ordered the women to stand in the open doorways of their cells and submit to a strip search, in view of the following persons: other cellmates present at the time; male correctional officers, male and female IDOC training academy cadets, the then-Warden of Logan Correctional Center, and others who were standing and walking by in the hallway; and scores of prisoners, cadets, and correctional officers in adjacent wings who had a clear view of the women through large windows on their cells.

2

4.     Many women asked to be moved out of the doorway of their cell or to be searched in private or outside the view of males, but their requests were refused.  Instead, cadets proceeded to strip search the prisoners by requiring them to lift their breasts, bend over and spread their buttocks, and squat and cough.

5.     Women were forced to stand naked in various positions during the group strip search for an unreasonably long period of time.  During the mass strip search, male correctional officers made derogatory comments and insulting gestures about the women's body parts and odors.  No accommodations were made for menstruating women, who were forced to remove sanitary napkins and tampons in view of their cellmates and other non-participants to the strip search.

6.     After the strip searches were completed, the women were not allowed to wash their hands or clean themselves even though they had touched intimate parts of their bodies while being searched.  Those who were menstruating were not given replacement feminine sanitary supplies.  Instead, the prisoners were ordered to get dressed, tightly handcuffed in "training" cuffs, and taken to the Logan Correctional Center day room.

7.     Women were then forced to sit facing the wall in the housing unit day room for upwards of two hours, with hands cuffed tightly behind their backs.  They were not allowed to use the bathroom, and those prisoners who were menstruating bled through their clothing and onto the floor.  Many prisoners notified the correctional staff that the cadets had handcuffed them too tightly, causing bruising and other injuries, but correctional staff refused to loosen the handcuffs.

8.     All of these women were subjected to a dehumanizing strip search without any penological purpose, even though the Defendants were well aware that most female prisoners have survived verbal, physical, and/or sexual abuse prior to and during their incarceration and are particularly vulnerable to re-traumatization during abusive strip searches.

9. This unconstitutional strip search was unfortunately not a one-time event, but a data point in a pattern of unconstitutional strip searches. Indeed, many of these women had already been forced to undergo a similarly traumatizing mass strip search at Lincoln Correctional Center in March 2011, over which they had already brought suit.

10. This strip search was a so-called "training exercise" for Illinois Department of Corrections cadets, authorized and orchestrated by Defendants Yurkovich and Locke, and one or more as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip search; it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies.

11. Logan Correctional Center had no justification to force the women to submit to this public group strip search or to force them to endure such an unsanitary, humiliating, degrading, and painful strip search procedure. Nevertheless, the above Defendants orchestrated, approved of, and facilitated this cadet training exercise and the degrading, dehumanizing, and unconstitutional public group strip search that accompanied it.

12. Plaintiffs bring their claims to compensate for being victimized by this public group strip search and, hopefully, to end the practice of unconstitutional, degrading and unnecessary strip searches of this nature in the Illinois Department of Corrections.

**JURISDICTION AND VENUE**

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiffs assert claims under federal law and the state law claim arises out of the same facts as the federal claims.

14. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

**PARTIES**

15. Logan Correctional Center is one of two facilities run by the Illinois Department of Corrections ("IDOC") that houses female prisoners. It houses women in multiple levels of security as well as a reception and classification center for female prisoners. It houses approximately 1800 women.

16. On October 31, 2013, Plaintiffs Donna Dupree, Sherry Hartison, Roslind Ball, Willette Benford, Shree Stidhum, Shandra Kidd, Tyesha Walton, and Sarah Stadtfeld was at all times relevant to the events at issue in this case an inmate at Logan Correctional Center. She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

17. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant ANGELA LOCKE was the acting warden at Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions. As such, Warden Locke was acting under color of law.

18. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant CLARA SHARON was an assistant warden at Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions. As such, Assistant Warden Sharon was acting under color of law.

19. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant Assistant Warden LINNE (a.k.a. LUNNE or LINNIE) was an assistant warden at

Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions. As such, Assistant Warden Linne was acting under color of law.

27. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant ALAN PASLEY was the Superintendent at Logan Correctional Center. He is sued in his individual and his official capacity for the challenged acts and omissions. As such, ALAN PASLEY was acting under color of law.

28. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant DEBBIE DENNING was the Deputy Director of Women and Family Services for the Illinois Department of Corrections, and was acting under color of law. She is sued in her individual and her official capacity.

29. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant JOSEPH YURKOVICH was the Chief of Operations for the Illinois Department of Corrections, and was acting under color of law. He is sued in his individual and his official capacity.

30. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant FELIPE ZAVALA was the manager of staff development and training for the Illinois Department of Corrections, and was acting under color of law. He is sued in his individual and official capacity.

31. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant RENEE HATFIELD was a training specialist in charge of supervising strip searches with the Illinois Department of Corrections, and was acting under color of law.

32. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant SALVADOR GODINEZ was the Director of the Illinois Department of Corrections, and was acting under color of law. He is sued in his official capacity.

33. As of October 28, 2015, Defendant JOHN BALDWIN was employed by the Illinois Department of Corrections as the Acting Director of IDOC. He is named in this Action as to Plaintiffs' request, on behalf of themselves, for injunctive relief only and in his official capacity. In his capacity as the Director of IDOC, he acts under color of law.

35. On or about October 31, 2013, and at all times relevant to the events at issue in this case Defendants Correctional Officer WARDEN; Correctional Officer BECK; Correctional Officer JOHNSON; Correctional Officer NESWICK; Correctional Officer FRANKLIN; Correctional Officer LESSMAN (a.k.a. LEESMAN); Correctional Officer SLATER; Correctional Officer LINNE (a.k.a. LUNNE or LINNIE); Correctional Officer COLE; Correctional Officer SEXTON; Correctional Officer MERRINGUE; Correctional Officer ELKEN; Correctional Officer MONTGOMERY; Major CHADDON; LT. MASON; and SGT. BRAINARD were employees of the Illinois Department of Correctional Center. As such, these Defendants (hereinafter the "Defendant Officers") were acting under color of law.

36. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY; DENNING, ZAVALA, HATFIELD, CHADDON, MASON, and one or more as-yet Unknown IDOC employees at Logan Correctional Center were in charge of permitting the IDOC cadets to perform this public group strip search at Logan. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

37. On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY, DENNING, YURKOVICH, ZAVALA, HATFIELD, and one or more as-yet Unknown IDOC employees were in charge of organizing and arranging for the IDOC cadets to perform the public group strip search at Logan Correctional Center. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

38. On or about October 31, 2013, and at all times relevant to the events at issue in this case, other Unknown IDOC employees participated in the unconstitutional strip search of Plaintiffs. These as yet Unknown IDOC employees were acting under color of law.

## FACTS

15. First thing on the morning of October 31, 2013, correctional officers and cadets came to certain housing units at Logan Correctional Center, including Housing Units 11 and 15. They woke up many prisoners and interrupted others who were just waking up, including Plaintiffs DUPREE, HARTISON, BALL, BENFORD, STIDHUM, KIDD, WALTON, and STADTFELD. Officers screamed at prisoners that they were there to perform a strip search, and that anyone who did not cooperate would be placed in segregation.

16. Women on those housing units, including Plaintiffs, were then strip searched in the doorway of their cells, in groups. Prisoners, including Plaintiffs, were required to lift their breasts, bend over and spread their buttocks, and squat and cough. Plaintiffs and the other subjects of the search were forced to stand naked in these positions for an unreasonably long period of time.

17. Some women were on their periods and were required, as part of the search, to remove tampons in view of everyone in their cell and in the vicinity in the hallway including male

correctional officers, IDOC training academy cadets, Defendant LOCKE, and other prisoners. After being searched, despite asking if they could replace their tampons, some women were not provided with access to a replacement tampon, and were forced to go without a tampon for two to three hours. Other women were forced to watch this humiliation.

18. During the time that these searches were being undertaken, male correctional officers, male and female IDOC training academy cadets, the then-Warden of Logan Correctional Center, and others who were not performing the actual strip searches were in the hallway observing the searches. Women were also searched in front of the other women who lived in their cells.

19. In addition, many of the cells that housed women being searched had windows that looked out onto the outside. Those windows did not have blinds and were completely open to the outside. Anyone outside the housing unit could look through the windows and observe women being stripped naked and searched, and spectators included IDOC cadets marching up to the housing unit, prisoners on adjacent housing units, and correctional officers.

20. After these strip searches were completed, the prisoners were ordered to get dressed and were handcuffed and taken to the Logan Correctional Center day room. Women were not allowed to wash their hands or clean themselves even though they had touched intimate parts of their bodies while being searched.

21. Women were then forced to sit facing the wall in the housing unit day room for upwards of two hours. They were not allowed to use the bathroom, and were handcuffed tightly behind their backs, many in painful positions. Some women were handcuffed using special orange "training" handcuffs which handcuff more tightly than even typical prison handcuffs. These handcuffs were extremely painful and were inappropriate for a situation in which no women were uncooperative or presented a security risk.

9

22.     Many of these women had been woken up for this search to be conducted and had no opportunity to use the facilities since they had gone to sleep the night before. Despite begging to use the restroom, they were not allowed to do so.

23.     Women who were menstruating were forced to sit in the dayroom in an uncomfortable position without being able to attend to their sanitary needs.

24.     All of these women were subjected to a dehumanizing strip search without any penological purpose, during which officers made derogatory comments and insulting gestures about the women's body parts and odors.

25.     This unconstitutional strip search was unfortunately not a one-time event. In fact, it was associated with a pattern of unconstitutional strip searches that had impacted many of these same women when they were incarcerated at Lincoln Correctional Center.

26.     This strip search, like the one that occurred in March 2011 at Lincoln Correctional Center, was a so-called "training exercise" for Illinois Department of Corrections cadets, organized by Defendants Yurkovich, Locke, and one or more as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip search – it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies. There was also no need to verbally harass, threaten, or handcuff the women involved in the search – all of the women who participated, including Plaintiffs DUPREE and HARTISON, were cooperative.

27.     The public group strip searches inflicted on the women at Logan are the most intrusive types of searches the government can conduct, and the manner in which they were conducted was degrading, dehumanizing, and humiliating.

28. Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY, WARDEN, BECK, JOHNSON, NESWICK, FRANKLIN, LESSMAN (a.k.a. LEESMAN), SLATER, LINNE (a.k.a. LUNNE or LINNIE), COLE, SEXTON, MERRINGUE, ELKEN, MONTGOMERY, MAJOR CHADDON, LT. MASON, SGT. BRAINARD, and HATFIELD, as well as other Unknown IDOC Employees, were personally present for and participated in these searches. Warden LOCKE ignored pleas from women being searched and held in the day room to have these searches conducted without men present, to be allowed to use the restroom, to be allowed access to feminine sanitary products, and to have their handcuffs adjusted so they did not cause pain.

29. Defendants LOCKE, SHARON, Assistant Warden LINNE, PASLEY, DENNING, CHADDON, GODINEZ, DENNING, YURKOVICH, ZAVALA and HATFIELD, as well as Unknown IDOC Employees, were responsible for planning this search, and training and supervising the other IDOC employees involved.

30. Many women wrote grievances and put them in the drop box in their housing unit. That drop box soon overflowed with grievances. Roughly a week after the search, the drop box was suddenly emptied without explanation.

### Count II – Claims Pursuant to 42 U.S.C. § 1983 (Count I Intentionally Omitted)
### Violations of the Eighth and Fourteenth Amendment

31. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

32. There was no valid penological justification for the October 13, 2013 public group strip search.

33. By instituting and continuing the group strip search described in fuller detail above, Defendants subjected Plaintiffs to punishment in violation of the Eighth Amendment.

34. As described more fully above, the Defendants conducted the public group strip search in a harassing manner intended to humiliate the prisoners.

35. As a direct result of the express decisions of LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD, and one or more as-yet Unknown IDOC employees in charge of organizing, approving, training the involved officers and/or arranging for this public group strip search, the Plaintiffs were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating. Furthermore, these Defendants as well as Defendant CHADDON had supervisory responsibility to terminate the public group strip search and failed to do so.

36. On information and belief, the Defendants executed this unconstitutional public strip search at Logan Correctional Center pursuant to a policy or practice implemented and overseen by Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD and other unknown IDOC Employees regarding strip searches conducted as training exercises for IDOC cadets. Accordingly, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of the Defendants who undertook this search. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

37. On information and belief, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD had notice of widespread

policies and practices of how the IDOC employees under their supervision and control conducted these searches, pursuant to which prisoners like Plaintiffs were subjected to unconstitutional strip searches, as described more fully above. Despite knowledge of these problematic policies and practices, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD did nothing to ensure that the prisoners at Logan Correctional Center were treated in accordance with the rights afforded them by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case and failed to provide adequate training and supervision of the IDOC employees under their supervision. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

38. The above-described policies and practices were able to exist and thrive because

39. Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD were deliberately indifferent to the problem, thereby effectively ratifying it.

40. The injuries of Plaintiffs were caused by employees of the IDOC, including but not limited to the named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

41. As a direct and proximate result of Defendants' conduct described in this Complaint, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

WHEREFORE, Plaintiffs DUPREE, HARTISON, BALL, BENFORD, STIDHUM, KIDD, WALTON, and STADTFELD demand judgment on behalf of themselves, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD.

### Count III
### 42 U.S.C. § 1983 – Conspiracy

42. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

43. Defendants reached an agreement among themselves to deprive the prisoners subjected to the unconstitutional strip search described in this Complaint of their constitutional rights and to protect one another from liability for depriving the prisoners of their rights, all as described in the various paragraphs of this Complaint.

44. In furtherance of this conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

45. The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to the rights of Plaintiffs.

46. As a direct and proximate result of the illicit prior agreement referenced above, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

47. These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

WHEREFORE, Plaintiffs DUPREE, HARTISON, BALL, BENFORD, STIDHUM, KIDD, WALTON, and STADTFELD respectfully demand judgment on behalf of themselves, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD.

# Count IV
## 42 U.S.C. § 1983 – Failure to Intervene

48. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

49. As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of the prisoners housed at Logan Correctional Center who were subjected to this unconstitutional search had they been so inclined. They failed to do so.

50. Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners involved in this strip search.

51. As a direct and proximate result of Defendants' misconduct, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

52. These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

WHEREFORE, Plaintiffs DUPREE, HARTISON, BALL, BENFORD, STIDHUM, KIDD, WALTON, and STADTFELD respectfully demand judgment on behalf of themselves, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; current and

former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD.

## JURY DEMAND

Plaintiffs DUPREE, HARTISON, BALL, BENFORD, STIDHUM, KIDD, WALTON, and STADTFELD respectfully demand a trial by jury on behalf of themselves on all issues so triable.

Respectfully Submitted,
PLAINTIFFS

By: /s/ Jared S. Kosoglad
Plaintiffs' Attorney

JARED S. KOSOGLAD
JARED S. KOSOGLAD, P.C.
223 West Jackson
Suite 200
Chicago, IL 60606
T: 312- 513-6000
E: jared@jaredlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney, on oath, states that she served the above amended complaint on all counsel of record via the Court's ECF System.

s/ Jared S. Kosoglad_____